**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| CASEY WILLIAMS<br>PO Box 345<br>Sharon Center, Ohio 44274<br><br>Plaintiff,<br><br><br>vs.<br><br><br><br>THE VILLAGE OF JUNCTION CITY<br>PO Box 105<br>Junction City, Ohio 43748<br><br>and<br><br>AMY ENGLISH,<br>in her official capacity as Chief of Police<br>and individual capacity<br>PO Box 105<br>Junction City, Ohio 43748<br><br>and<br><br>EDWIN KEISTER<br>in his official capacity as Mayor<br>and individual capacity<br>PO Box 105<br>Junction City, Ohio 43748<br><br>Defendants. | )<br>)<br>)  Case No.<br>)<br>)  Judge<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**VERIFIED COMPLAINT FOR MONEY DAMAGES**
**JURY DEMAND ENDORSED HEREIN**

## INTRODUCTION

This is an action seeking damages arising under U.S.C. Section 1983 as a result of the

unconstitutional seizure of Plaintiff Casey Williams's property (one dog known as "Apollo"),

and violation of due process in contravention of Plaintiff's rights to due process and guarantee

against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States and Article 1 of the Ohio Constitution, and subsequent malicious and retaliatory criminal prosecution. Plaintiff also seeks attorney fees and costs pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

## JURISDICTION AND VENUE

1. This Court has jurisdiction as the Plaintiff's claims against Defendants are based upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to the Plaintiff by the Constitution of the United States.

2. This Court has jurisdiction pursuant to § 1331 of the Judicial Code (28 U.S.C.A § 1331) as this is a civil action arising under the Constitution of the United States.

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) as this action seeks to remedy deprivations, under color of law, of the Plaintiff's rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States and applicable federal laws.

4. Plaintiff's claims for compensatory damages are sought under 28 U.S.C. §§ 2201 and 2202 and corresponding Ohio provisions.

5. Plaintiff's claims for attorney's fees and costs are predicated upon 42 U.S.C. § 1988, which authorizes the award of attorney's fees and costs to prevailing parties pursuant to 42 U.S.C § 1983.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) because all of the parties are residents of this judicial district and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

**PARTIES**

7. Plaintiff hereby incorporates by reference all allegations contained in all numbered paragraphs of this Complaint as if set forth fully here.

8. At all times relevant, Plaintiff Casey Williams was a resident of Fairfield County, Ohio and owned a 2-year-old intact male Belgian Malinois breed dog known as "Apollo," which Defendants seized and impounded from Plaintiff's possession on or about January 5, 2023.

9. Defendant the Village of Junction City ("Junction City") is an Ohio political subdivision village located in Perry County, Ohio.

10. Defendant Amy English is the current Chief of Police of Defendant Junction City and at all times relevant, was the Chief of Police of Junction City.

11. Defendant English, in her Official and Individual Capacity, is one of the persons who illegally seized the Plaintiff's dog.

12. Defendant English, in her Official and Individual Capacity, is the person who brought retaliatory criminal charges without cause against Plaintiff.

13. Defendant Edwin Keister is the current Mayor of Defendant Junction City and at all times relevant, was the Mayor of Junction City.

14. Defendant Keister, in his Official and Individual Capacity, is one of the persons who conspired in the illegal seizure of the Plaintiff's dog.

15. Defendant Keister, in his Official and Individual Capacity, is one of the persons who conspired in the retaliatory criminal charges without cause against Plaintiff.

16. At all times relevant herein, Plaintiff was an employee of Defendant Junction City within the meaning of 29 U.S.C. § 203(e).

17. At all times relevant herein, Defendant Junction City was an employer within the meaning of 29 U.S.C. § 203(s)(1)(c).

18. At all relevant times, Defendant Junction City acted by and through its agents, servants, and employees, including but not limited to its employees, both named in this action, and unknown employees, not named, but to be discovered.

## FACTUAL ASSERTIONS

19. Plaintiff hereby incorporates by reference all allegations contained in all numbered paragraphs of this Complaint as if set forth fully here.

20. On February 17, 2023, Plaintiff was sworn in as an Auxiliary Officer with the Junction City Police Department (JCPD).

21. At that time, Defendant Junction City employed Joey Carr as its Chief of Police.

22. During his employment with Defendant Junction City, Carr personally acquired the subject dog, a 2-year-old intact male Belgian Malinois breed dog known as "Apollo" for both personal and work use.

23. Upon information and belief, Defendant Junction City did not pay Carr for feeding, exercising, training, and grooming the police dog, taking the police dog to veterinary visits as needed, and generally caring for the police dog, and that former Chief of Police treated the dog as his personal pet.

24. During a Defendant Junction City council meeting on September 6, 2023, when discussing the termination of Carr's employment with the Village, it was stated that "Joey will keep the dog," as documented in the meeting minutes and audio recording.

25. Upon the departure of the former Chief of Police's employment from Defendant Junction City, he took Apollo to his home and continued to treat him as his personal pet. Upon information and belief, Defendant Junction City did not object to this.

26.  Shortly thereafter, Plaintiff was sworn in as Interim Chief of Police and Carr continued to retain Apollo at his personal residence.

27.  On September 25, 2023, the former Chief of Police contacted Plaintiff Williams, who was now the Defendant Junction City's interim Chief of Police, and asked him if he wanted Apollo, to which Plaintiff Williams agreed.

28.  On September 30, 2025, Plaintiff Williams picked up Apollo and began feeding, exercising, training, and grooming the dog, taking the dog to veterinary visits as needed, generally caring for the dog, and treating the dog as his personal pet.

29.  Plaintiff Williams then approached the Defendant Junction City at a village council meeting and asked that he be given permission to work Apollo as a police canine on behalf of the Defendant Junction City.

30.  Defendant Junction City agreed, but stated that Plaintiff Williams would have to pay for all necessary training on his own.

31.  On October 4, 2023, Defendant Junction City council meeting minutes reflect: "Apollo was given to Casey by Joey Carr."

32.  On October 5, 2023, Plaintiff registered Apollo with the Perry County Dog Warden.

33.  At all relevant times, Plaintiff Williams has been responsible for Apollo, regardless of whether Plaintiff and the dog were on-duty or off-duty. At all relevant times, Plaintiff has housed the dog, and has been responsible for feeding, exercising, training, and grooming the dog, taking the dog to veterinary visits as needed, and generally caring for the dog. At all relevant times, Plaintiff spent approximately 25 hours per workweek performing these tasks without pay.

34.  Defendant Junction City allowed Plaintiff Williams to use the canine police cruiser and bring Apollo to work to help build a bond between the two before training, but stated that Plaintiff Williams could not "dispatch" the dog until training was complete.

35.  From that point forward, Plaintiff Williams spent all his work and spare time with Apollo while he saved the funds to receive canine handler training with Apollo.

36.   In November 2023, the now Junction City Mayor, Defendant Keister, commented that the Defendant Junction City could sell Apollo for a substantial amount of money, to which Plaintiff Williams objected, as Apollo is his personal dog.

37.  Sometime after that meeting, Defendant Keister was sworn in as Mayor of Defendant Junction City.

38.  Thereafter, the Defendant Junction City in conjunction with Defendant English and Defendant Keister began to conspire to remove Apollo from Plaintiff Williams.

39.  Defendant English was sworn in as the Defendant Junction City's new Chief of Police on January 3, 2024, after Plaintiff Williams tendered his resignation as Defendant Junction City's interim Chief of Police on the same date.

40.  On January 3, 2024, Plaintiff Williams accepted an auxiliary police officer position with Defendant Junction City.

41.  Defendant Junction City has a police department consisting of two law enforcement officers—Defendant English and Plaintiff Williams.

42.  On January 3, 2024, Defendant English and Plaintiff Williams began a peaceful transition of power of the Chief position, with Defendant English and Plaintiff Williams inventorying his office, records, and equipment.

43. On January 3, 2024, Defendant English demanded that Plaintiff Williams return his dog, Apollo, to Defendant Junction City, to which Plaintiff refused, stating the dog is his personal property.

44. Thereafter, on January 3, 2024, Defendant English "suspended" Plaintiff Williams from his employment and demanded that he leave Defendant Junction City's property or he would be charged with trespass.

45. At all times relevant, Defendants English and Junction City were aware that there was a civil dispute ongoing regarding Apollo's ownership.

46. At all times relevant, Defendants English and Junction City were aware that Plaintiff Williams claimed personal ownership of Apollo.

47. On January 5, 2024, Defendant English applied for a search warrant claiming that Plaintiff Williams has property belonging to Defendant Junction City and was wrongfully withholding it, despite the fact that Plaintiff Williams was actually still employed by Defendant Junction City and never refused to return any property belonging to Defendant Junction City.

48. On January 5, 2024, Defendant English applied for a search warrant making other claims about Plaintiff's employment history, which have no bearing on any alleged criminal offense and are purely civil in nature.

49. On January 5, 2024, Defendant English applied for a search warrant with knowledge that all of the claims made therein were civil matters involving an employee dispute or were otherwise disputed by Plaintiff Williams.

50. On January 5, 2024, Defendant English executed a criminal search warrant to advance the Defendant Junction City's position in a civil employee dispute.

51. On January 5, 2024, Defendant English executed a criminal search warrant when she knew or should have known there was no probable cause for such search.

52. Despite Plaintiff Williams' cooperation with Defendant Junction City, including extensive attempts to contact Junction City via its Mayor, Defendant English obtained a search warrant on January 5, 2024.

53. On January 5, 2024, Defendant English, assisted by numerous City of Lancaster Police Officers, forcibly removed Plaintiff Williams' dog, Apollo, from his residence, along with other personal property belonging to either Plaintiff Williams or one of his employers. Items removed belonging to Defendant Junction City were police patches that Plaintiff Williams paid for personally and affixed to his work uniforms as part of his employment with Defendant Junction City and other items that Plaintiff Williams told Defendant Junction City were in his possession as part of his employment duties.

54. During the execution of the warrant, police were recorded intentionally turning Plaintiff Williams' at home security camera toward a wall so that it could not record the search.

55. During execution of the warrant, Apollo was placed in the Defendant Junction City's cruiser.

56. The search warrant return inventory did not reflect that Apollo was seized by Defendant English or Defendant Junction City and was later amended.

57. After Apollo was seized on January 5, 2024, Plaintiff Williams experienced anxiety and other symptoms related to fears about the whereabouts of his dog, Apollo, and the manner of execution of the search warrant, to the degree that he had to seek professional medical support.

58. Apollo is a unique form of personal property with characteristics that cannot be precisely duplicated.

59. On January 5, 2024 Plaintiff Williams, via counsel, demanded the return of Apollo. Defendant Junction City claimed the dog was "evidence."

60. On January 8, 2024, a litigation hold letter was issued by counsel, specifically named the dog, Apollo.

61. On January 24, 2024, Defendant English requested an Ohio Law Enforcement Gateway ("OHLEG") audit via email regarding Defendant Junction City's use of the system.

62. On February 13, 2024, Plaintiff attempted to file a motion to return his seized property pursuant to R.C. 2981.03(A)(4) in Fairfield County, but the filing was refused.

63. On March 29, 2024, Defendant English emailed the Ohio Association of Chiefs of Police offering Apollo for sale.

64. On May 15, 2024, Fairfield County Municipal Court filed Plaintiff's motion to return his seized property pursuant to R.C. 2981.03(A)(4).

65. On May 23, 2024, Apollo was sold to a third party by Defendant Junction City.

66. On May 29, 2024, counsel for Defendant Junction City filed a response to the Fairfield Municipal motion filing claiming the dog was being retained as "evidence" in an "ongoing criminal investigation," and such filing included a sworn affidavit from Defendant English also dated May 29, 2025.

67. At the time of the filing, Defendants were aware that Apollo was offered for sale for approximately sixty days prior and was sold six days before the "evidence" claim was made.

68. On May 30, 2024, Plaintiff was officially terminated by Defendant Junction City.

69. On June 1, 2024, the Fairfield Municipal Court declined jurisdiction for return of the subject property and indicted the pleading should be filed in Perry County, which Plaintiff proceeded to do.

70. On June 18, 2024, Defendant Junction City meeting minutes noted the sale of Apollo to a third party.

71. On or about July 25, 2024, Plaintiff was served with a felony criminal indictment for misuse of OHLEG, a violation of Ohio Revised Code 2913.04(D), a felony of the fifth degree (the "felony case").

72. On October 16, 2024, Perry County held a hearing on Plaintiff's motion to return property and stated they could not order Apollo returned because he was no longer located in Perry County, depriving the court of jurisdiction.

73. Apollo was sold despite a litigation hold issued January 8, 2024, and despite the Defendants' knowledge that ownership was still disputed and despite themselves claiming the dog was being held as "evidence" in an "ongoing investigation."

74. Defendant English was the complainant in the felony case against Plaintiff.

75. The felony case alleged that Plaintiff improperly used OHLEG to run a background check on Defendant Junction City's council member, John Clark.

76. Through discovery, it became apparent that Defendant English did not have probable cause to bring the charge and intentionally or recklessly failed to conduct a full investigation prior to bringing such felony case.

77. Defendants' actions were motivated by retaliatory animus and were not supported by an objectively reasonable belief that Plaintiff committed a crime.

78. On November 7, 2024, Plaintiff obtained a copy of the background request on Clark from the Ohio Department of Liquor Control, indicating that Plaintiff's OHLEG background check that was subject to the felony case was, in fact, proper.

79. On November 21, 2024, the felony case was dismissed by the State without prejudice.

80. On January 28, 2025, OHLEG and the Law Enforcement Automated Date System ("LEADS") denied Plaintiff's access rights, effectively ending his law enforcement career because access to these systems is required to perform the duties of a police officer.

81. On February 11, 2025, Defendant English informed Plaintiff via email that he was "still being investigated for 4 charges including those listed under the search warrant."

82. On February 11, 2025, Defendant English was aware that the Ohio Bureau of Criminal Investigation had completed a full investigation into the situation involving Apollo and found that all witnesses believed Plaintiff was, in fact, Apollo's owner and therefore, Defendant English had no cause to make such a statement on February 11, 2025 other than for purposes of continuing to retaliate against and cause emotional harm to Plaintiff.

83. On April 1, 2025, Plaintiff moved out of state due to emotional distress, constantly fearing additional search warrants or arrest.

84. Plaintiff has been unable to continue working in law enforcement, even outside Ohio, due to the wrongful felony case.

85. On June 17, 2025, the Perry County Common Pleas Court granted dismissal of the felony case with prejudice and ordered the record expunged.

**CLAIMS FOR RELIEF**
**COUNT 1**
**Fourth Amendment**
**Illegal Search and Seizure of the dog, Apollo**
**(42 U.S.C. § 1983)**

86. Plaintiff hereby incorporates by reference all allegations contained in all numbered paragraphs of this Complaint as if set forth fully here.

87. As stated previously, a seizure of Plaintiff's dog occurred on or about January 5, 2024.

88.   The taking and continued retention of Plaintiff's property, his dog, is a seizure under color of law.

89.   Plaintiff has been deprived of being able to provide his choice of care, food, medical attention, exercise and other indicia of ownership to his dog.

90.   The seizure and retention of the dog was unreasonable because there are no rules, guidelines, procedures, policies, regulations or uniform standards concerning when it is permissible to seize and retain Plaintiff's dog.

91.   The seizure was unreasonable because the Defendant Junction City has no required specific training or specialized knowledge regarding when to impound a dog and regarding what the process or procedure, including a deprivation hearing, is for a person to redeem their dog once seized.

92.   The seizure is unreasonable because the length of the seizure and retention is completely unknown to Plaintiff and others who have had their live property seized, impounded, and retained by Junction City.

93.   The seizure is unreasonable because of the absence of any rules, guidelines, procedures, policies, regulations, or uniform standards to limit the unfettered discretion of the Defendant Junction City and the lack of any review process or means to challenge the propriety of the seizure and retention of Plaintiff's dog after seizure and impoundment renders enforcement of the statutes arbitrary and capricious.

94.   Plaintiff was not been provided with the necessary due process, including an opportunity to contest the validity of the seizure and retention of his dog, which did not even appear on the initial search warrant inventory.

95. Defendants violated Plaintiff's rights under the Fourth Amendment to the U.S. Constitution and similar provisions of the Ohio Constitution.

96. Defendants' seizure of Plaintiff's dog is an infringement of both property and liberty right.

97. Defendants' disposal and sale of Plaintiff's dog is an infringement of both property and liberty right.

98. Plaintiff, and others similarly situated, have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from continuing their unlawful policies, practices, customs, procedures, standards and/or methods, which have directly and proximately caused such constitutional abuses.

99. As a direct and proximate result of the acts as stated herein by each of the Defendants, Plaintiff's constitutional rights have been violated which has caused him to suffer physical, mental, and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment, and additional damages, including loss of his property, as will more fully appear at trial.

100. Plaintiff suffered, and continues to suffer, injuries and damages as a direct and proximate result of the above-described conduct of Defendants, as will more fully appear at trial.

**COUNT 2**
**Due Process**
**Fourteenth Amendment**
**Deprivation of Property and Liberty of the dog, Apollo**
**(42 U.S.C. § 1983)**

101. Plaintiff hereby incorporates by reference all allegations contained in all numbered paragraphs of this Complaint as if set forth fully here.

102. Defendants, acting under color of state law, are depriving Plaintiff, and others similarly situated, of their liberty and property rights secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. 1983.

103. Defendants knew, or should have known, that their above-described conduct violated Plaintiff's due process rights which are secured by the Fourteenth Amendment of the U.S. Constitution, in violation of 42 U.S.C. § 1983.

104. Defendants, by their conduct, as described herein, and acting under color of state law, have deprived Plaintiff of his right to his own property, which he has a "legitimate claim of entitlement to."

105. Defendants, by their conduct, as described herein, and acting under color of state law, have deprived Plaintiff of his right to his own liberty and property.

106. The acts of the Defendants impermissibly violated Plaintiff's substantive and procedural due process rights by applying the law contrary to constitutional parameters, and by seizing his dog without due process.

107. Defendants and their employees and agents violated Plaintiff's right to be free from unlawful prosecution and secure in his persons and property.

108. Among other violations of the Constitution, Defendants failed to provide a deprivation hearing on the seizure and impoundment of Plaintiff's dog, which is particularly important given the fact that dogs are "expirable" property.

109. Plaintiff has been denied due process by the seizure, impoundment, and disposal of his dog, without being afforded an opportunity to be heard at a meaningful time and in a meaningful manner at which to contest the validity of the impoundment and sale of his dog.

110. Among other violations of the Constitution, Defendants have failed to provide even basic evidentiary materials related to the seizure and impoundment of Plaintiff's dog, rendering him wholly unable to form a defense.

111. Plaintiff has been denied due process by the seizure and sale of his dog, without being afforded an opportunity to be heard at a meaningful time and in a meaningful manner at which to contest the validity of the impoundment, retention, and sale of his dog.

112. Defendants' unlawful actions were done with the specific intent to deprive Plaintiff of his constitutional rights to be secure in his persons and property.

113. Defendant English, in her official and individual capacity, recklessly or intentionally acted outside the bounds of her lawful duties pursuant to the Ohio Revised Code to Plaintiff's detriment.

114. Plaintiff is informed and believes that the acts of the Defendants and their employees and agents were intentional in failing to protect and preserve Plaintiff's person and property and that, at minimum, Defendants were deliberately indifferent to the likely consequence that harm would result from the illegal search and seizure.

115. The seizure of Plaintiff's property by Defendants' employees and agents, and the disposal of that property by Defendants, was conducted pursuant to a policy, practice, or custom that violates the United States and Ohio Constitutions.

116. There is no mechanism which exists for Plaintiff to prevent unconstitutional application and enforcement of said seizure and disposal of his property.

117. As a direct and proximate result of the acts as stated herein by each of the Defendants, Plaintiff's constitutional rights have been violated which has caused him to suffer physical, mental, and emotional injury and pain, mental anguish, suffering, humiliation and

embarrassment, and additional damages, including loss of his property, as will more fully appear at trial.

118. Plaintiff suffered, and continues to suffer, injuries and damages as a direct and proximate result of the above-described conduct of Defendants, as will more fully appear at trial.

## COUNT 3
### Violation of Article I, Section 16 of the Ohio Constitution

119. Plaintiff hereby incorporates by reference all allegations contained in all numbered paragraphs of this Complaint as if set forth fully here.

120. The acts of the Defendants were actions taken under color of state law.

121. The acts of the Defendants in enforcing or threatening to wrongfully enforce the law deprived Plaintiff, and others similarly situated, of his property in violation of the Fourteenth Amendment to the United States Constitution and the Ohio Constitution.

122. As a direct and proximate result of the acts as stated herein by each of the Defendants, Plaintiff's constitutional rights have been violated which has caused him to suffer physical, mental, and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment, and additional damages, including loss of his property, as will more fully appear at trial.

123. Plaintiff suffered, and continues to suffer, injuries and damages as a direct and proximate result of the above-described conduct of Defendants, as will more fully appear at trial.

## COUNT 4
### First and Fourth Amendments
### Retaliatory Prosecution
### (42 U.S.C. § 1983)

124. Plaintiff hereby incorporates by reference all allegations contained in all numbered paragraphs of this Complaint as if set forth fully here.

125. Defendants initiated or caused a criminal prosecution in retaliation for Plaintiff's protected First Amendment activity and in order to deprive him of his property.

126. Defendants did not conduct an appropriate investigation and lacked probable cause to support the prosecution.

127. Defendants' retaliatory animus was a substantial and motivating factor in the decision to bring charges.

128. Defendants violated Plaintiff's rights under the First and Fourth Amendment to the U.S. Constitution and similar provisions of the Ohio Constitution.

129. As a direct and proximate result of the acts as stated herein by each of the Defendants, Plaintiff's constitutional rights have been violated which has caused him to suffer physical, mental, and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment, loss of income and employment opportunities, and additional damages as will more fully appear at trial.

130. Plaintiff suffered, and continues to suffer, injuries and damages as a direct and proximate result of the above-described conduct of Defendants, as will more fully appear at trial.

**COUNT 5**
**Fourth Amendment**
**Malicious Prosecution**
**(42 U.S.C. § 1983)**

131. Plaintiff hereby incorporates by reference all allegations contained in all numbered paragraphs of this Complaint as if set forth fully here.

132. Defendants made, influenced, or participated in the decision to prosecute Plaintiff.

133. The prosecution was initiated without a reasonable investigation and without probable cause.

134. Plaintiff suffered a deprivation of liberty consistent with a seizure.

135. The criminal proceedings terminated in Plaintiff's favor.

136. Defendants violated Plaintiff's rights under the Fourth Amendment to the U.S. Constitution and similar provisions of the Ohio Constitution.

137. As a direct and proximate result of the acts as stated herein by each of the Defendants, Plaintiff's constitutional rights have been violated which has caused him to suffer physical, mental, and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment, loss of income and employment opportunities, and additional damages as will more fully appear at trial.

138. Plaintiff suffered, and continues to suffer, injuries and damages as a direct and proximate result of the above-described conduct of Defendants, as will more fully appear at trial.

**COUNT 6**
**Civil Conspiracy to Violate Civil Rights**
**(42 U.S.C. § 1983)**

139. Plaintiff hereby incorporates by reference all allegations contained in all numbered paragraphs of this Complaint as if set forth fully here.

140. At all relevant times, Defendants, acting under color of state law, reached an understanding in concert to use a criminal process, the search warrant, to resolve their civil employment dispute.

141.  At all relevant times, Defendants, acting under color of state law, reached an understanding in concert to retaliate against Plaintiff by initiating a criminal prosecution without probable cause in the felony case.

142. The object of the conspiracy was to permanently divest Plaintiff of his property (the dog), punish Plaintiff for constitutionally protected activity, to chill Plaintiff's future speech and conduct, and to misuse the criminal process as a retaliatory tool.

143. In furtherance of the conspiracy, Defendants committed overt acts, including but not limited to communications and meetings between Defendant English and Defendant Keister concerning Plaintiff; direction, encouragement, pressure, or approval by Defendant Keister to pursue the search warrant and criminal charge against Plaintiff; initiation of the felony case without a full or impartial investigation; knowingly ignoring exculpatory evidence and material witnesses; providing false, misleading, or incomplete information to prosecuting authorities.

144. Defendants English and Keister were not engaged in legitimate legislative or law-enforcement functions, but instead acted outside any lawful scope to accomplish the retaliatory objective of the conspiracy.

145. Defendants English and Keister knew or reasonably should have known that there was no probable cause to support the search warrant or criminal charges against Plaintiff.

146. As a direct and proximate result of the conspiracy, Plaintiff was subjected to criminal prosecution, deprivation of liberty and property, emotional distress, reputational harm, financial loss, and other damages.

147. Defendants' actions violated Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

148. Each conspirator is liable for the acts of all co-conspirators committed in furtherance of the conspiracy.

149. As a direct and proximate result of the acts as stated herein by each of the Defendants, Plaintiff's constitutional rights have been violated which has caused him to suffer physical, mental, and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment, loss of income and employment opportunities, and additional damages as will more fully appear at trial.

150. Plaintiff suffered, and continues to suffer, injuries and damages as a direct and proximate result of the above-described conduct of Defendants, as will more fully appear at trial.

## COUNT 7
**Monell Claim**

151. Plaintiff hereby incorporates by reference all allegations contained in all numbered paragraphs of this Complaint as if set forth fully here.

152. At all relevant times herein, Defendants, acting through the individual defendants, developed, implement, enforced, encouraged and sanctioned de facto policies, practices, and/or customs exhibiting deliberate indifference to Plaintiff's constitutional rights which caused violation of such rights.

153. Defendants' unlawful actions were done willfully, knowingly and with the specific intent to deprive Plaintiff of his conditional rights under the Fourteenth Amendment to the U.S. Constitution and the Ohio Constitution.

154. Defendants maintain a policy and/or custom of deliberate indifference to the rights of the citizens of Ohio, and such policy and/or custom is part of a pattern of unconstitutional violations by Defendants.

155. Defendants, knew, or should have known, that the Defendants would confront situations such as the events which form the basis of the actions herein stated.

156. The failure to provide the police officers with proper and adequate training failed to furnish these individuals with appropriate knowledge to make proper and informed decisions which resulted in the deprivation of Plaintiff's constitutional rights.

157. Defendants pursued an official policy and/or custom of failing to provide adequate training, monitoring, and supervision of its police officers in the performance of their duties and the protection of the constitutional rights of the citizens.

158. Defendants failed to provide adequate training, monitoring, and supervision of its police officers, in the performance of their duties and to ensure the constitutional protections of citizens.

159. Defendants' failure to provide adequate training, monitoring, and supervision of its police officers resulted in a deprivation of clearly established constitutional protections for citizens.

160. Defendants knew, or should have known, that the police officers were acting in such a way as to violate the constitutional rights of citizens they encounter while performing their duties, and were aware of such constitutional violations, or should have been aware of such constitutional violations, had other similar incidents been properly investigated.

161. Defendant English and her supervisors, at all times prior to and subsequent to the seizure of the dog, had a legal duty and ample opportunity to intervene and prevent the illegal seizure, and return the dog to its registered owner.

162. Defendant English and her supervisors, at all times prior to and subsequent to the felony case, had a legal duty and ample opportunity to intervene and prevent the felony case from being filed.

163. The failure of said Defendants to intervene was part of the pattern, practice, and custom to not intervene or report such incidents, but remain quiet to maintain silence and tacit acknowledgment and approval of such actions.

164. The constitutional violations committed by Defendants were and are directly and proximately caused by policies, practices, and/or customs developed, implemented, enforced, encouraged, and sanctioned by Defendants including the failure: (a) to adequately supervise and train its officers and agents, including the individual Defendants, thereby failing to adequately discourage further constitutional violations; (b) to properly and adequately monitor and

discipline its police officers, including Defendant English, and (c) to adequately and properly investigate citizen complaints of police officers.

165. As a direct and proximate result of the acts as stated herein by each of the Defendants, Plaintiff's constitutional rights have been violated which has caused him to suffer physical, mental, and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment, loss of income and employment opportunities, and additional damages as will more fully appear at trial.

88. Plaintiff suffered, and continues to suffer, injuries and damages as a direct and proximate result of the above-described conduct of Defendants, as will more fully appear at trial.

## COUNT 8
### Attorney Fees - 42 U.S.C. § 1988

166. Plaintiff hereby incorporates by reference all allegations contained in all numbered paragraphs of this Complaint as if set forth fully here.

167. Pursuant to 42 U.S.C. § 1988, Plaintiff seeks attorney fees.

## COUNT 9
### Conversion
### State Cause of Action

168. Plaintiff hereby incorporates by reference all allegations contained in all numbered paragraphs of this Complaint as if set forth fully here.

169. Defendants wrongfully exerted control over the personal property of Plaintiff, the dog Apollo, in a manner inconsistent with Plaintiff's rights.

170. Defendants converted Plaintiff's property as a result of their wrongful acts of seizing the dog and selling the subject dog to a third party.

171. Plaintiff has been damaged as a result of Defendants' conversion of his property.

172. Plaintiff suffered, and continues to suffer, injuries and damages as a direct and proximate result of the above-described conduct of Defendants, as will more fully appear at trial.

## COUNT 10
### Malicious Prosecution
### State Cause of Action

173. Plaintiff hereby incorporates by reference all allegations contained in all numbered paragraphs of this Complaint as if set forth fully here.

174. Defendants made, influenced, or participated in the decision to prosecute Plaintiff in the felony case.

175. The prosecution of the felony case was initiated without probable cause.

176. As a consequence of the felony case, Plaintiff suffered a deprivation of liberty apart from the initial seizure Plaintiff suffered a deprivation of liberty consistent with a seizure.

177. The felony case resolved in Plaintiff's favor.

178. Plaintiff has been damaged as a result of Defendants' malicious prosecution.

179. Plaintiff suffered, and continues to suffer, injuries and damages as a direct and proximate result of the above-described conduct of Defendants, as will more fully appear at trial.

## COUNT 11
### Abuse of Process
### State Cause of Action

180. Plaintiff hereby incorporates by reference all allegations contained in all numbered paragraphs of this Complaint as if set forth fully here.

181. A criminal prosecution was initiated against the Plaintiff and that the Defendants made, influenced, or participated in the decision to prosecute.

182. Defendants misused the criminal process for an ulterior purpose.

183. Plaintiff has been damaged as a result of Defendants' abuse of process.

184. Plaintiff suffered, and continues to suffer, injuries and damages as a direct and proximate result of the above-described conduct of Defendants, as will more fully appear at trial.

### COUNT 12
### Intentional Infliction of Emotional Distress
### State Cause of Action

185. Plaintiff hereby incorporates by reference all allegations contained in all numbered paragraphs of this Complaint as if set forth fully here.

186. Defendants intentionally or recklessly engaged in extreme and outrageous conduct, including conspiring to misuse criminal charges to deprive Plaintiff of his dog and free speech; initiating prosecution without probable cause or adequate investigation, causing or prolonging the seizure and detention of Plaintiff's dog despite knowing Plaintiff's lawful ownership, and acting with knowledge that companion animals hold unique emotional significance beyond ordinary personal property.

187. Defendants' conduct went beyond all possible bounds of decency and would be regarded as atrocious and utterly intolerable in a civilized community, particularly where state actors abused their authority to separate an individual from a companion animal through false or retaliatory criminal process.

188. Defendants intended to cause emotional distress to Plaintiff, or knew or should have known that severe emotional distress was the certain or probable result of their actions.

189. As a direct and proximate result of Defendants' conduct, Plaintiff suffered serious and severe emotional distress, such that a reasonable person would be unable to cope adequately under the circumstances, including but not limited to emotional injury and pain, mental anguish, suffering, humiliation and embarrassment, loss of income and employment opportunities, and additional damages as will more fully appear at trial.

190. As a direct and proximate result of the acts as stated herein by each of the Defendants, Plaintiff's constitutional rights have been violated which has caused him to suffer physical, mental, and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment, loss of income and employment opportunities, and additional damages as will more fully appear at trial.

191. Plaintiff suffered, and continues to suffer, severe injuries and damages as a direct and proximate result of the above-described conduct of Defendants, as will more fully appear at trial.

## COUNT 13
### FLSA Overtime Violations
### (Plead in the Alternative)

192. Plaintiff hereby incorporates by reference all allegations contained in all numbered paragraphs of this Complaint as if set forth fully here.

193. If Defendant Junction City was the lawful owner of Apollo, Defendant Junction City violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, which requires that that non-exempt employees be paid for hours worked in excess of 40 in a workweek at a rate of not less than one and one-half times their regular rate of pay.

194. Defendant Junction City violated the FLSA by having Plaintiff perform uncompensated work training and caring for Defendant's police dog.

195. Defendant further violated the FLSA because it failed to account for all hours Plaintiff worked for the purposes of calculating his overtime hours in a workweek.

196. Defendant's practice and policy of not paying Plaintiff for all time worked and all overtime compensation earned at a rate of one and one-half times his regular rate of pay for all hours

worked over forty (40) each workweek violated the FLSA, 29 U.S.C. §§ 201-219, 29 C.F.R. § 785.24.

197. Defendant's failure to keep records of all hours worked for each workday and the total hours worked each workweek by Plaintiff violated the FLSA, 29 U.S.C. §§ 201-219, 29 CFR § 516.2(a)(7).

198. By engaging in the above-mentioned conduct, Defendant willfully, knowingly, and/or recklessly violated provisions of the FLSA.

199. As a result of Defendant's practices and policies, Plaintiff has been damaged in that he has not received wages due to him pursuant to the FLSA. 29 U.S.C. § 216(b) entitles [him] to an award of "unpaid overtime compensation" as well as "an additional equal amount as liquidated damages." Section 216(b) further provides that "[t]he court … shall, in addition to any judgment awarded to the Plaintiffs or plaintiffs, allow a reasonable attorney's fee to be paid by the Defendants, and costs of the action."

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands Judgment as follows:

1. For judgment in favor of Plaintiff and against the Defendants in an amount to be determined by the trier of fact in this matter and in the form of compensatory damages plus interest and punitive damages;

2. For costs of the action and reasonable attorney fees; and

3. For any other and further relief to which the Plaintiff may be entitled.

## JURY DEMAND

The Plaintiff herein demands that this action be tried to a jury as provided by law.

Respectfully submitted,
HOLLAND & MUIRDEN

*/s/ DanaMarie K. Pannella*
DanaMarie K. Pannella (#0090221)
1343 Sharon-Copley Road, P. O. Box 345
Sharon Center, Ohio 44274
(330) 239-4480; Fax (330) 239-6224
E-mail: dpannella@hmlawohio.com

## VERIFICATION

I swear under penalty of perjury that the Complaint is true and accurate to the best of my knowledge and belief.

Casey Williams, Plaintiff