EXHIBIT
A

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| CASEY WILLIAMS | ) | |
| PO Box 345 | ) | |
| Sharon Center, Ohio 44274 | ) | Case No. |
| | ) | |
| Plaintiff, | ) | Judge |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| THE VILLAGE OF JUNCTION CITY | ) | |
| PO Box 105 | ) | |
| Junction City, Ohio 43748 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AMY ENGLISH, | ) | |
| in her official capacity as Chief of Police | ) | |
| and individual capacity | ) | |
| PO Box 105 | ) | |
| Junction City, Ohio 43748 | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT WITH REQUEST FOR INJUNCTIVE RELIEF
## JURY DEMAND ENDORSED HEREIN

### INTRODUCTION

This is an action seeking injunctive relief and damages arising under U.S.C. Section 1983 as a result of the unconstitutional seizure of Plaintiff Casey Williams's property (one dog known as "Apollo") and violation of due process in contravention of Plaintiff's rights to due process and guarantee against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States and Article 1 of the Ohio Constitution. Plaintiff also seeks attorney fees and costs pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

**JURISDICTION AND VENUE**

1. This Court has jurisdiction as the Plaintiff's claims against Defendants are based upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to the Plaintiff by the Constitution of the United States.

2. This Court has jurisdiction pursuant to § 1331 of the Judicial Code (28 U.S.C.A § 1331) as this is a civil action arising under the Constitution of the United States.

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) as this action seeks to remedy deprivations, under color of law, of the Plaintiff's rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States and applicable federal laws.

4. Plaintiff's claims for compensatory damages are sought under 28 U.S.C. §§ 2201 and 2202 and corresponding Ohio provisions.

5. Plaintiff's claims for attorney's fees and costs are predicated upon 42 U.S.C. § 1988, which authorizes the award of attorney's fees and costs to prevailing parties pursuant to 42 U.S.C § 1983.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) because all of the parties are residents of this judicial district and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

**PARTIES**

7. Plaintiff hereby incorporates by reference all allegations contained in all numbered paragraphs of this Complaint as if set forth fully here.

8. Plaintiff Casey Williams is a resident of Fairfield County, Ohio and is the owner of the dog, a 2-year-old intact male Belgian Malinois breed dog known as "Apollo," who served as a police canine in training, which Defendants seized and incarcerated on or about January 5, 2023.

9. Defendant the Village of Junction City (Junction City) is an Ohio political subdivision village.

10. Defendant Amy English is the current Chief of Police of Junction City.

11. Defendant Amy English, in her Official and Individual Capacity, is one of the persons who illegally seized the Plaintiff's dog.

12. At all times relevant herein, Plaintiff was an employee of Defendant Junction City within the meaning of 29 U.S.C. § 203(e).

13. At all times relevant herein, Defendant Junction City was an employer within the meaning of 29 U.S.C. § 203(s)(1)(c).

14. At all relevant times, Defendant Junction City acted by and through its agents, servants, and employees, including but not limited to its employees, both named in this action, and unknown employees, not named, but to be discovered.

### FACTUAL ASSERTIONS

15.  On or about January 5, 2024, Defendant English, Defendant Junction City's Police Chief, who was assisted by numerous City of Lancaster, Ohio Police Officers  ("John Doe Lancaster Police 1-6"), impounded Plaintiff Williams' dog, Apollo, from his residence in Lancaster, Ohio pursuant to a search warrant issued by the Lancaster Municipal Court.

16.  Defendant English was the applicant for the search warrant.

17.  Defendant English was sworn in as the Defendant Junction City's new Chief of Police on January 3, 2024, after Plaintiff Williams tendered his resignation as Defendant Junction City's interim Chief of Police on the same date.

18.  On January 3, 2024, Plaintiff Williams accepted an auxiliary police officer position with Defendant Junction City.

19. Defendant Junction City has a police department consisting of two law enforcement officers—Defendant English and Plaintiff Williams.

20. On January 3, 2024, Defendant English and Plaintiff Williams began a peaceful transition of power of the Chief position, with Defendant English and Plaintiff Williams inventorying his office, records, and equipment.

21. On January 3, 2024, Defendant English demanded that Plaintiff Williams return his dog, Apollo, to Defendant Junction City, to which Plaintiff refused, stating the dog is his personal property.

22. Thereafter, on January 3, 2024, Defendant English "suspended" Plaintiff Williams from his employment and demanded that he leave Defendant Junction City's property or he would be charged with trespass.

23. At all times relevant, Defendants English and Junction City were aware that there was a civil dispute ongoing regarding Apollo's ownership.

24. At all times relevant, Defendants English and Junction City were aware that Plaintiff Williams claimed personal ownership of Apollo.

25. Plaintiff Williams received Apollo from the former Junction City Chief of Police, who used Apollo as a police canine for Defendant Junction City. Upon information and belief, Defendant Junction City did not pay that former Chief of Police for feeding, exercising, training, and grooming the police dog, taking the police dog to veterinary visits as needed, and generally caring for the police dog, and that former Chief of Police treated the dog as his personal pet.

26. Upon the departure of the former Chief of Police's employment from Defendant Junction City, he took Apollo to his home and continued to treat him as his personal pet. Upon information and belief, Defendant Junction City did not object to this.

27.   About a month later, the former Chief of Police contacted Plaintiff Williams, who was now the Defendant Junction City's interim Chief of Police, and asked him if he wanted Apollo, to which Plaintiff Williams agreed.

28.   Plaintiff Williams picked up Apollo right away and began feeding, exercising, training, and grooming the dog, taking the dog to veterinary visits as needed, generally caring for the dog, and treating the dog as his personal pet.

29.   Plaintiff Williams then approached the Defendant Junction City at a village council meeting and asked that he be given permission to work Apollo as a police canine on behalf of the Defendant Junction City.

30.   Defendant Junction City agreed, but stated that Plaintiff Williams would have to pay for all necessary training on his own.

31.   At all relevant times, Plaintiff Williams has been responsible for Apollo, regardless of whether Plaintiff and the dog were on-duty or off-duty. At all relevant times, Plaintiff has housed the dog, and has been responsible for feeding, exercising, training, and grooming the dog, taking the dog to veterinary visits as needed, and generally caring for the dog. At all relevant times, Plaintiff has spent approximately 25 hours per workweek performing these tasks without pay.

32.   Defendant Junction City allowed Plaintiff Williams to use the canine police cruiser and bring Apollo to work to help build a bond between the two before training, but stated that Plaintiff Williams could not "dispatch" the dog until training was complete.

33.   From that point forward, Plaintiff Williams spent all his work and spare time with Apollo while he saved the funds to receive canine handler training with Apollo.

34.   In November 2023, the now Junction City Mayor Edwin Keister commented that the Defendant Junction City could sell Apollo for a substantial amount of money, to which Plaintiff Williams objected, as Apollo is his personal dog.

35.   Sometime after that meeting, the new Keister was sworn in as Mayor of Defendant Junction City.

36.   Thereafter, the Defendant Junction City in conjunction with Defendant English began to conspire to remove Apollo from Plaintiff Williams.

37.   On January 5, 2024, Defendant English applied for a search warrant claiming that Plaintiff Williams has property belonging to Defendant Junction City and was wrongfully withholding it, despite the fact that Plaintiff Williams was actually still employed by Defendant Junction City and never refused to return any property belonging to Defendant Junction City.

38.   On January 5, 2024, Defendant English applied for a search warrant making other claims about Plaintiff's employment history, which have no bearing on any alleged criminal offense and are purely civil in nature.

39.   On January 5, 2024, Defendant English applied for a search warrant with knowledge that all of the claims made therein were civil matters involving an employee dispute or were otherwise disputed by Plaintiff Williams.

40.   On January 5, 2024, Defendant English executed a criminal search warrant to advance the Defendant Junction City's position in a civil employee dispute.

41.   Despite Plaintiff Williams' cooperation with Defendant Junction City, including extensive attempts to contact Junction City via its Mayor, Defendant English obtained a search warrant on January 5, 2024.

42. On January 5, 2024, Defendant English, assisted by numerous City of Lancaster Police Officers ("John Doe Lancaster Police 1-6"), forcibly removed Plaintiff Williams' dog, Apollo, from his residence, along with other personal property belonging to either Plaintiff Williams or one of his employers. Items removed belonging to Defendant Junction City were police patches that Plaintiff Williams paid for personally and affixed to his work uniforms as part of his employment with Defendant Junction City and other items that Plaintiff Williams told Defendant Junction City were in his possession as part of his employment duties.

43. During the execution of the warrant, John Doe Lancaster Police 1-6 was recorded intentionally turning Plaintiff Williams' at home security camera toward a wall so that it could not record the search.

44. During execution of the warrant, Apollo was placed in the Defendant Junction City's cruiser.

45. The search warrant return inventory does not reflect that Apollo was seized by Defendant English or Defendant Junction City.

46. After Apollo was seized on January 5, 2024, Plaintiff Williams experienced anxiety and other symptoms related to fears about the whereabouts of his dog, Apollo, and the manner of execution of the search warrant, to the degree that he had to seek professional medical support.

47. Apollo is a unique form of personal property with characteristics that cannot be precisely duplicated.

48. Plaintiff Williams is not aware of Apollo's whereabouts.

49. On January 5, 2024 Plaintiff Williams, via counsel, demanded the return of Apollo. Defendant Junction City has not responded.

**CLAIMS FOR RELIEF**
**COUNT 1**
**Injunctive Relief**

50. Plaintiff hereby incorporates by reference all allegations contained in all numbered paragraphs of this Complaint as if set forth fully here.

51. Defendants have violated Plaintiff's Fourth and Fourteenth Amendment rights because the Defendants have no authority to seize and impound a person's dog via a search warrant as part of a civil employment dispute.

52. The continued seizure and impoundment of Plaintiff's dog is further unreasonable because Defendant English made at least one false statement in a search warrant affidavit, specifically that Plaintiff Williams was wrongfully withholding property belonging to Defendant Junction City when she knew or should have known this was not true.

53. If not enjoined by this Court, Defendants and their agents, representatives, and employees will continue to implement policies and practice that deny Plaintiff his constitutional rights without due process in violation of his right to be secure in his person and property.

54. Plaintiff asks this Court to Order Defendants, as well as their agents, representatives, and employees, and all other persons acting in concert or participation with them, to immediately release his dog Apollo to him.

55. Defendants' course of conduct has caused, and will continue to cause, Plaintiff to suffer real and immediate threat of irreparable injury, as a result of the existence, operation, enforcement, and prosecution.

56. Immediate irreparable injury includes, but is not limited to, loss of property (Apollo), companionship, support, freedom, financial loss, and emotional injury.

57. Defendants are acting, and threatening to act, under color of state law to deprive Plaintiff of his constitutional rights.

58. Plaintiff has no plain, speedy, or adequate remedy at law for such an injury.

59. The challenged laws and processes violate the Due Process of the Fourteenth Amendment, the right to be secure in persons and property under the Fourth amendment, and 42 U.S.C. § 1983, as well as the Constitution of Ohio. Accordingly, injunctive relief pursuant to 42 U.S.C. § 1983 and other authority is appropriate.

**COUNT 2**
**Fourth Amendment**
**Illegal Search and Seizure**
**(42 .S.C. § 1983)**

60. Plaintiff hereby incorporates by reference all allegations contained in all numbered paragraphs of this Complaint as if set forth fully here.

61. As stated previously, a seizure of Plaintiff's dog occurred on or about January 5, 2024.

62. The taking and continued retention of Plaintiff's property, his dog, is a seizure under color of law.

63. Plaintiff has been deprived of being able to provide his choice of care, food, medical attention, exercise and other indicia of ownership to his dog.

64. The seizure and retention of the dog is unreasonable because there are no rules, guidelines, procedures, policies, regulations or uniform standards concerning when it is permissible to seize and retain Plaintiff's dog.

65. The seizure is unreasonable because the Defendant Junction City has no required specific training or specialized knowledge regarding when to impound a dog and regarding what the process or procedure, including a deprivation hearing, is for a person to redeem their dog once seized.

66. The seizure is unreasonable because the length of the seizure and retention is completely unknown to Plaintiff and others who have had their live property seized, impounded, and retained by Junction City.

67. The seizure is unreasonable because of the absence of any rules, guidelines, procedures, policies, regulations, or uniform standards to limit the unfettered discretion of the Defendant Junction City and the lack of any review process or means to challenge the propriety of the seizure and retention of Plaintiff's dog after seizure and impoundment renders enforcement of the statutes arbitrary and capricious.

68. Plaintiff has not been provided with the necessary due process, including an opportunity to contest the validity of the seizure and retention of his dog, which does not even appear on the search warrant inventory.

69. Defendants violated Plaintiff's rights under the Fourth Amendment to the U.S. Constitution and similar provisions of the Ohio Constitution.

70. Defendants' seizure of Plaintiff's dog is an infringement of both property and liberty right.

71. Plaintiff, and others similarly situated, have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from continuing their unlawful policies, practices, customs, procedures, standards and/or methods, which have directly and proximately caused such constitutional abuses.

72. As a direct and proximate result of the acts as stated herein by each of the Defendants, Plaintiff's constitutional rights have been violated which has caused his to suffer physical, mental, and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment, as will more fully appear at trial.

**COUNT 3**
**Due Process**
**Fourteenth Amendment**
**Deprivation of Property and Liberty**
**(42 U.S.C. § 1983)**

73. Plaintiff hereby incorporates by reference all allegations contained in all numbered paragraphs of this Complaint as if set forth fully here.

74. Defendants, acting under color of state law, are depriving Plaintiff, and others similarly situated, of their liberty and property rights secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. 1983.

75. Defendants knew, or should have known, that their above-described conduct violated Plaintiff's due process rights which are secured by the Fourteenth Amendment of the U.S. Constitution, in violation of 42 U.S.C. § 1983.

76. Defendants, by their conduct, as described herein, and acting under color of state law, have deprived Plaintiff of his right to his own property, which he has a "legitimate claim of entitlement to."

77. Defendants, by their conduct, as described herein, and acting under color of state law, have deprived Plaintiff of his right to his own liberty and property.

78. The acts of the Defendants impermissibly violated Plaintiff's substantive and procedural due process rights by applying Chapter 955 contrary to constitutional parameters, and by seizing his dog without due process.

79. Defendants and their employees and agents violated Plaintiff's right to be free from unlawful prosecution and secure in his persons and property.

80. Among other violations of the Constitution, Defendants have failed to provide a deprivation hearing on the seizure and impoundment of Plaintiff's dog, which is particularly important given the fact that dogs are "expirable" property.

81. Plaintiff has been denied due process by the seizure and impoundment of his dog, without being afforded an opportunity to be heard at a meaningful time and in a meaningful manner at which to contest the validity of the continued impoundment and retention of his dog.

82. Among other violations of the Constitution, Defendants have failed to provide even basic evidentiary materials related to the seizure and impoundment of Plaintiff's dog, rendering his wholly unable to form a defense.

83. Defendants' unlawful actions were done with the specific intent to deprive Plaintiff of his constitutional rights to be secure in his persons and property.

84. Defendant English, in her official and individual capacity, is recklessly or intentionally acting outside the bounds of her lawful duties pursuant to the Ohio Revised Code to Plaintiff's detriment.

85. Plaintiff is informed and believes that the acts of the Defendants and their employees and agents were intentional in failing to protect and preserve Plaintiff's person and property and that, at minimum, Defendants were deliberately indifferent to the likely consequence that harm would result from the illegal search and seizure.

86. The seizure of Plaintiff's property by Defendants' employees and agents, and the retention of that property by Defendant Junction City, is being conducted pursuant to a policy, practice, or custom that violates the United States and Ohio Constitutions.

87. There is no mechanism which exists for Plaintiff to prevent unconstitutional application and enforcement of said seizure.

88.  As a direct and proximate result of the acts as stated herein by each of the Defendants, Plaintiff's constitutional rights have been violated which has caused his to suffer physical, mental, and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment, as will more fully appear at trial.

## COUNT 4
### Violation of Article I, Section 16 of the Ohio Constitution

89.  Plaintiff hereby incorporates by reference all allegations contained in all numbered paragraphs of this Complaint as if set forth fully here.

90.  The acts of the Defendants were actions taken under color of state law.

91.  The acts of the Defendants in enforcing or threatening to wrongfully enforce the law deprived Plaintiff, and others similarly situated, of his property in violation of the Fourteenth Amendment to the United States Constitution and the Ohio Constitution.

92.  As a direct and proximate result of the acts as stated herein by each of the Defendants, Plaintiff's constitutional rights have been violated which has caused his to suffer physical, mental, and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment, as will more fully appear at trial.

## COUNT 5
### Monell Claim

93.  Plaintiff hereby incorporates by reference all allegations contained in all numbered paragraphs of this Complaint as if set forth fully here.

94.  At all relevant times herein, Defendants, acting through the individual defendants, developed, implement, enforced, encouraged and sanctioned de facto policies, practices, and/or customs exhibiting deliberate indifference to Plaintiff's constitutional rights which caused violation of such rights.

95. Defendants' unlawful actions were done willfully, knowingly and with the specific intent to deprive Plaintiff of his conditional rights under the Fourteenth Amendment to the U.S. Constitution and the Ohio Constitution.

96. Defendants maintain a policy and/or custom of deliberate indifference to the rights of the citizens of Ohio, and such policy and/or custom is part of a pattern of unconstitutional violations by Defendants.

97. Defendants, knew, or should have known, that the Defendants would confront situations such as the events which form the basis of the actions herein stated.

98. The failure to provide the police officers with proper and adequate training failed to furnish these individuals with appropriate knowledge to make proper and informed decisions which resulted in the deprivation of Plaintiff's constitutional rights.

99. Defendants pursued an official policy and/or custom of failing to provide adequate training, monitoring, and supervision of its police officers in the performance of their duties and the protection of the constitutional rights of the citizens.

100. Defendants failed to provide adequate training, monitoring, and supervision of its police officers, in the performance of their duties and to ensure the constitutional protections of citizens.

101. Defendants' failure to provide adequate training, monitoring, and supervision of its police officers resulted in a deprivation of clearly established constitutional protections for citizens.

102. Defendants knew, or should have known, that the police officers were acting in such a way as to violate the constitutional rights of citizens they encounter while performing their duties, and were aware of such constitutional violations, or should have been aware of such constitutional violations, had other similar incidents been properly investigated.

103. Defendant English, her supervisors, and other police officers on the scene at the time of the seizure of the dog, and at all times subsequent to the seizure of the dog, had a legal duty and ample opportunity to intervene and prevent the illegal seizure, and return the dog to its registered owner.

104. The failure of said Defendants to intervene was part of the pattern, practice, and custom to not intervene or report such incidents, but remain quiet to maintain silence and tacit acknowledgment and approval of such actions.

105. The constitutional violations committed by Defendants were and are directly and proximately caused by policies, practices, and/or customs developed, implemented, enforced, encouraged, and sanctioned by Defendants including the failure: (a) to adequately supervise and train its officers and agents, including the individual Defendants, thereby failing to adequately discourage further constitutional violations; (b) to properly and adequately monitor and discipline its police officers, including Defendant English, and (c) to adequately and properly investigate citizen complaints of police officers.

106. As a direct and proximate result of the acts as stated herein by each of the Defendants, Plaintiff's constitutional rights have been violated which has caused his to suffer physical, mental, and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

88. Plaintiff suffered, and continues to suffer, injuries and damages as a direct and proximate result of the above-described conduct of Defendants, as will more fully appear at trial.

## COUNT 6
### Attorney Fees - 42 U.S.C. § 1988

107. Plaintiff hereby incorporates by reference all allegations contained in all numbered paragraphs of this Complaint as if set forth fully here.

108. Pursuant to 42 U.S.C. § 1988, Plaintiff seeks attorney fees.

## COUNT 7
### Replevin
### State Cause of Action

109. Plaintiff hereby incorporates by reference all allegations contained in all numbered paragraphs of this Complaint as if set forth fully here.

110. Plaintiff owns the dog which was seized by Defendants.

111. Defendants took possession of Plaintiff's dog without consent.

112. Plaintiff requested return of his dog.

113. Defendants have failed to return Plaintiff's property.

114. Plaintiff has been damaged as a result of Defendants' seizure and retention of his dog.

## COUNT 8
### Conversion
### State Cause of Action

115. Plaintiff hereby incorporates by reference all allegations contained in all numbered paragraphs of this Complaint as if set forth fully here.

116. Defendants converted Plaintiff's property as a result of their wrongful acts of seizing the dog.

117. Plaintiff has been damaged as a result of Defendants' conversion of his property.

## COUNT 9
### FLSA Overtime Violations
### (Plead in the Alternative)

118. Plaintiff hereby incorporates by reference all allegations contained in all numbered paragraphs of this Complaint as if set forth fully here.

119. If Defendant Junction City if the lawful owner of Apollo, Defendant Junction City violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, which requires that that non-

exempt employees be paid for hours worked in excess of 40 in a workweek at a rate of not less than one and one-half times their regular rate of pay.

120. Defendant Junction City violated the FLSA by having Plaintiff perform uncompensated work training and caring for Defendant's police dog.

121. Defendant further violated the FLSA because it failed to account for all hours Plaintiff worked for the purposes of calculating his overtime hours in a workweek.

122. Defendant's practice and policy of not paying Plaintiff for all time worked and all overtime compensation earned at a rate of one and one-half times his regular rate of pay for all hours worked over forty (40) each workweek violated the FLSA, 29 U.S.C. §§ 201-219, 29 C.F.R. § 785.24.

123. Defendant's failure to keep records of all hours worked for each workday and the total hours worked each workweek by Plaintiff violated the FLSA, 29 U.S.C. §§ 201-219, 29 CFR § 516.2(a)(7).

124. By engaging in the above-mentioned conduct, Defendant willfully, knowingly, and/or recklessly violated provisions of the FLSA.

125. As a result of Defendant's practices and policies, Plaintiff has been damaged in that he has not received wages due to him pursuant to the FLSA. 29 U.S.C. § 216(b) entitles [him] to an award of "unpaid overtime compensation" as well as "an additional equal amount as liquidated damages." Section 216(b) further provides that "[t]he court … shall, in addition to any judgment awarded to the Plaintiffs or plaintiffs, allow a reasonable attorney's fee to be paid by the Defendants, and costs of the action."

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands Judgment as follows:

1. For a preliminary and permanent injunction returning Apollo to the possession of Plaintiff;

2. For judgment in favor of Plaintiff and against the Defendants in an amount to be determined by the trier of fact in this matter and in the form of compensatory damages plus interest and punitive damages;

3. For costs of the action and reasonable attorney fees; and

4. For any other and further relief to which the Plaintiff may be entitled.

## JURY DEMAND

The Plaintiff herein demands that this action be tried to a jury as provided by law.

Respectfully submitted,
HOLLAND & MUIRDEN

*/s/ DanaMarie K. Pannella*
DanaMarie K. Pannella (#0090221)
1343 Sharon-Copley Road, P. O. Box 345
Sharon Center, Ohio 44274
(330) 239-4480; Fax (330) 239-6224
E-mail: dpannella@hmlawohio.com

**VERIFICATION**

I swear under penalty of perjury that the Complaint is true and accurate to the best of my knowledge and belief.

Casey Williams, Plaintiff