

EXHIBIT
B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CASEY WILLIAMS,

      **Plaintiff,**

     **v.**                        **Civil Action 2:24-cv-106**
                                     **Judge Edmund A. Sargus, Jr.**
                                     **Magistrate Judge Chelsey M. Vascura**

**VILLAGE OF JUNCTION CITY,** *et al.***,**

     **Defendants.**

## REPORT AND RECOMMENDATION

Plaintiff, Casey Williams, brings this action against his employer, Village of Junction City, and its Police Chief, Amy English, arising out of the allegedly wrongful seizure of a police canine in his possession. Plaintiff advances claims under the United States and Ohio Constitutions and the Fair Labor Standards Act, as well as state tort claims. (Compl., ECF No. 1.) Plaintiff has submitted a request to file a civil action *in forma pauperis*. (ECF No. 3.) The Court **GRANTS** Plaintiff's request to proceed *in forma pauperis*. All judicial officers who render services in this action shall do so as if the costs had been prepaid. 28 U.S.C. § 1915(a).

This matter is also before the Court for the initial screen of Plaintiff's Complaint as required by 28 U.S.C. § 1915(e)(2) to identify cognizable claims and to recommend dismissal of Plaintiff's Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). Having performed the initial screen, the undersigned

**RECOMMENDS** that the Court **DISMISS** Plaintiff's Counts 1 through 8 for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2).

## I.  BACKGROUND

Plaintiff Casey Williams is a police officer for Defendant Village of Junction City, Ohio. (Compl. ¶ 18, ECF No. 1.) The Junction City Police Department has recently undergone several changes in leadership. Defendant Amy English served as Chief of Police until her resignation in 2021, at which time non-party Joey Carr took over as Chief of Police. Mr. Carr remained in that position until his resignation in September 2023. At that time, Plaintiff took over as Interim Chief of Police.[1] Ms. English then returned as Chief of Police effective January 3, 2024. (Compl. ¶ 17, ECF No. 1.) Simultaneously, Plaintiff accepted a position as an auxiliary police officer with Junction City. (*Id.* at ¶ 18.) Currently, Plaintiff and Ms. English make up the entirety of Junction City's Police Department. (*Id.* at ¶ 19.)

At the time of Mr. Carr's resignation in September 2023, Mr. Carr was in possession of a Belgian Malinois dog known as "Apollo." Mr. Carr "used Apollo as a police canine for Defendant Junction City" and "treated the dog as his own personal pet." (*Id.* at ¶ 25.) Upon his resignation, Mr. Carr "took Apollo to his home and continued to treat him as his personal pet." (*Id.*) While Plaintiff was serving as Interim Chief of Police, Mr. Carr contacted Plaintiff and

---

[1] These dates and certain names were not contained in Plaintiff's Complaint, but the Court takes judicial notice of these facts as reported in the media for the limited purpose of clarifying the timeline. *See New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) ("A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice."); *Junction City's new police chief has long experience in county*, https://www.perrytribune.com/news/article_f6861f42-e184-5a74-a3f8-3f74abcd684a.html [https://perma.cc/B7HS-YG3X]; *K9 taken from newly retired Ohio interim police chief during search warrant*, https://myfox28columbus.com/news/local/k9-taken-from-newly-retired-junction-city-ohio-interim-police-chief-during-search-warrant [https://perma.cc/6Q7G-BYXS].

"asked him if he wanted Apollo." (*Id.* at ¶ 27.) Plaintiff agreed; he immediately picked up Apollo and began feeding, exercising, training, and grooming the dog, taking the dog to veterinary visits as needed, generally caring for the dog, and treating the dog as his personal pet. (*Id.* at ¶¶ 27–28.) Plaintiff received permission from Defendant Junction City to work Apollo as a police canine on behalf of Defendant Junction City, so long as Plaintiff paid for all necessary training. (*Id.* at ¶¶ 29–30.)

On January 3, 2024, upon resuming her position as Chief of Police, Defendant Amy English demanded that Plaintiff return Apollo to Junction City. (*Id.* at ¶ 21.) Plaintiff refused, stating that Apollo is Plaintiff's personal property. (*Id.*) Ms. English then suspended Plaintiff's employment. (*Id.* at ¶ 22.) On January 5, 2024, Ms. English obtained and executed a search warrant for Plaintiff's home premised on his unauthorized possession of property belonging to Junction City. (*Id.* at ¶¶ 37, 40.) During the search, Ms. English, assisted by several City of Lancaster police officers, forcibly removed Apollo. (*Id.* at ¶ 42.) After Apollo was seized, Plaintiff experienced anxiety and other symptoms related to fears about Apollo's whereabouts. (*Id.* at ¶ 46.) Although Plaintiff, through counsel, demanded Apollo's return, Junction City has not responded. (*Id.* at ¶ 49.)

Plaintiff's Complaint contains nine claims for relief: (1) injunctive relief, requiring Defendants to return Apollo to Plaintiff; (2) illegal search and seizure in violation of the Fourth Amendment; (3) deprivation of property and liberty in violation of the Fourteenth Amendment Due Process Clause; (4) violation of Article I, Section 16 of the Ohio Constitution; (5) a *Monell* claim against Junction City; (6) attorney's fees under 42 U.S.C. § 1988; (7) replevin; (8) conversion; and (9) unpaid overtime in violation of the Fair Labor Standards Act. He seeks a

3

preliminary and permanent injunction requiring Defendants to return Apollo to Plaintiff, compensatory and punitive damages, interest, and attorney's fees and costs.

## II.     STANDARD OF REVIEW

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id*. at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e) as part of the statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>
> * * *
>
> (B) the action or appeal—
>
> (i) is frivolous or malicious; [or]
>
> (ii) fails to state a claim on which relief may be granted . . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31. Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). See also *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal and factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "detailed factual allegations, a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A complaint will not "suffice if it tenders naked assertion devoid of further factual enhancement." *Id.* (cleaned up). Instead, in order to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id*. (cleaned up). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted).

### III.   ANALYSIS

Plaintiff's Counts 1 through 8 fail to state a claim on which relief can be granted. Turning first to Plaintiff's Count 3 for deprivation of property[2] in violation of the Fourteenth Amendment Due Process Clause, Plaintiff's claim fails because he has not alleged that available state-law remedies for deprivation of property are inadequate. *See Fox v. Van Oosterum*, 176 F.3d 342, 349 (6th Cir. 1999) ("State tort remedies generally satisfy the postdeprivation process requirement of the Due Process Clauses.") (citing *Hudson v. Palmer*, 468 U.S. 517, 534–36 (1984)); *Jefferson v. Jefferson Cty. Pub. Sch. Sys.*, 360 F.3d 583, 587–88 (6th Cir. 2004) ("If

---

[2] Plaintiff captions this count as "Deprivation of Property and Liberty," but the Court can discern no liberty interest implicated by Plaintiff's allegations.

satisfactory state procedures are provided in a procedural due process case, then no constitutional deprivation has occurred despite the injury."). Here, Plaintiff has not alleged that the state tort remedies of conversion and replevin—both of which are claims advanced in Plaintiff's Complaint—do not suffice. *See Fox*, 176 F.3d at 349 (identifying a claim for conversion as satisfying due process requirements).

Next, Plaintiff cannot succeed on his Count 4 for violation of the Ohio Constitution, because Ohio does not recognize a private right of action for violation of its Constitution. *See Provens v. Stark Cty. Bd. of Mental Retardation & Developmental Disabilities*, 64 Ohio St. 3d 252, 261 (1992) (finding no private right of action by public employees under the Ohio Constitution when there are other reasonably satisfactory remedies); *Melendez v. Sinclair Cmty. College*, No. 3:05-cv-338, 2007 WL 81846, *7 (S.D. Ohio Jan. 8, 2007) ("there is no private right of action in Ohio law for violations of Article 1, Section 16"); *Talley v. City of Cleveland*, No. 1:14 cv 1697, 2015 WL 366698, *5 (N.D. Ohio Jan. 26, 2015) ("The Supreme Court of Ohio has not recognized the existence of a private cause of action for damages under the Ohio Constitution."); *PDU, Inc. v. City of Cleveland*, No. 81944, 2003 WL 21555157, *5 (8th Dist. 2003) ("because Sections 2, 11, and 16 of Article I of the Ohio Constitution are not self-executing provisions, they do not create independent causes of action").

As to the bulk of Plaintiff's remaining causes of action, these claims also fail because Plaintiff's conclusory allegation that he "is the owner of the dog" is not plausible in light of the other facts asserted in the Complaint. (Compl. ¶ 8, ECF No. 1.) Plaintiff alleges that he received Apollo from Mr. Carr, Junction City's former police chief, who used the dog as a police canine and "treated" Apollo as his own personal pet. (*Id.* at ¶ 25.) Plaintiff does not allege that Apollo was personally owned by Mr. Carr. Nor does Plaintiff allege that he or Mr. Carr purchased

6

Apollo from Junction City as provided by Ohio Revised Code § 9.62 (permitting police canine handlers to purchase a police dog upon the disbanding of police canine unit). Instead, the plausible inference to draw from the alleged facts is that Apollo was owned by Junction City and was cared for by Mr. Carr as part of his employment duties. As a result, Plaintiff's allegations suggest that Mr. Carr—who was merely a former Junction City employee at the time Plaintiff took possession of Apollo—had no ability to transfer ownership of Apollo to Plaintiff.

Given that Plaintiff does not plausibly allege that he owns Apollo, he therefore does not plausibly allege that any of his rights were violated by Defendants' seizure of Apollo. Accordingly, Count 1 (seeking an injunction to return Apollo), Count 2 (unreasonable seizure of Apollo in violation of the Fourth Amendment), Count 5 (a *Monell* claim for Junction City's maintenance of policies or customs that violate Plaintiff's constitutional rights with regard to the seizure of Apollo), Count 6 (attorney's fees under 42 U.S.C. § 1988 available for successful constitutional claims), Count 7 (replevin for return of Apollo), and Count 8 (conversion of Apollo) all fail to state any claim on which relief can be granted.

However, if Plaintiff is able, subject to Federal Rule of Civil Procedure 11, to allege facts raising a plausible inference that he owns Apollo (for instance, that Mr. Carr originally purchased Apollo with personal funds, or that Mr. Carr or Plaintiff purchased Apollo from Junction City under § 9.62), then, in the alternative to filing an objection to this Report and Recommendation, Plaintiff may seek leave to amend his Complaint accordingly.

All that remains is Plaintiff's Count 9 for unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"). Plaintiff pleads this claim in the alternative to his first eight counts and contends that, if Junction City is the lawful owner of Apollo, then Junction City violated the FLSA when it failed to pay him for the time Plaintiff spent training

and caring for Apollo. The undersigned finds that Plaintiff's allegations raise a plausible inference that Junction City is Apollo's owner, that Plaintiff performed work for Junction City's benefit in caring for Apollo, and that he was not paid for this work. Junction City was aware of this work, as it gave Plaintiff permission "to work Apollo as a police canine on behalf of the Defendant Junction City." (Compl. ¶ 29–30, ECF No. 1.) Further, it is not readily apparent to the undersigned that Plaintiff qualifies for an exemption from the FLSA's overtime requirements. *See* 29 C.F.R. § 541.3(b)(1) (FLSA exemptions under 29 U.S.C. § 213(a)(1) "do not apply to police officers . . . who perform work such as . . . rescuing fire, crime or accident victims; preventing or detecting crimes; conducting investigations or inspections for violations of law; performing surveillance; pursuing, restraining and apprehending suspects; detaining or supervising suspected and convicted criminals, including those on probation or parole; interviewing witnesses; interrogating and fingerprinting suspects; preparing investigative reports; or other similar work."). Accordingly, the undersigned does not recommend dismissal of this Count.

## IV. DISPOSITION

Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 3) is **GRANTED**. For the reasons set forth above, it is **RECOMMENDED** that Plaintiff's Counts 1 through 8 be dismissed for failure to state a claim under 28 U.S.C. § 1915(e)(2). Plaintiff may seek leave to amend his Complaint as outlined above in the alternative to objecting to this Report and Recommendation.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those

specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE